G. W. BRADLEY *v.* AMOS N. BLANDIN AND SOMERSET LAND COMPANY.*

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 17, 1917.

*Principal and Agent—Revocation—How Pleaded—Practice Act —Directed Verdict—When Error—Evidence—Waiver of Right to Object—Burden of Proof as to Revocation of Agent's Authority—Good Faith of Principal—Jury Question.*

*This case was originally assigned to Munson, C. J.

The doctrine of revocation, in the law of principal and agent, implies that a valid contract of agency has been entered into, but has, prior to its performance by the agent, been terminated by the lawful act of the principal.

In an action brought by an agent against his principal to recover a commission alleged to have been earned in the sale of timber, the defence of revocation of the agent's authority, since it does not deny the contract of agency but avoids it, is affirmative and should be specially set up in the answer, under the Practice Act, (No. 90, Acts 1915).

It is error to order a verdict upon an issue not within the scope of the pleadings although evidence bearing thereon is in the case, unless the right to object to such evidence as being outside the pleadings has been waived.

Under the circumstances, *held*, plaintiff had not waived his right to object that certain evidence was outside the pleadings.

In an action brought by an agent against his principal to recover a commission alleged to have been earned, where it is claimed by defendant that the agency was revoked, the burden of proof on the question of revocation is upon defendant.

One of the essential elements of a valid revocation of an agent's authority is the good faith of the principal, which, under the evidence of this case, was a question for the jury.

CONTRACT. Plea, the general issue. Trial by jury at the December Term, 1915, Bennington County, *Butler*, J., presiding. At the close of the evidence the court directed a verdict for both defendants. The plaintiff excepted. The opinion states the case.

*Batchelder & Bates* and *F. C. Archibald* for plaintiff.

*Clark C. Fitts* and *Hermon E. Eddy* for defendants.

POWERS, J. This plaintiff seeks to recover a commission on the sale of the soft-wood timber on a 12,000-acre tract of land in Bennington County called the Manchester Slope. A verdict was ordered for the defendants and the case comes here on plaintiff's exceptions thereto. So far as here need be stated, the evidence, viewed in the light most favorable to the plaintiff, fairly and reasonably tended to show the following facts:

Early in the year 1910, the plaintiff and Blandin, who represented the Somerset Land Company, the owner of the land in question, met at Manchester and entered into an agreement that the defendants would pay the plaintiff a commission if he sold the Slope. The amount of this commision was not then agreed upon; but by the terms of the arrangement then entered into, it was to become payable if the plaintiff effected a sale of the land or timber, or any part thereof to George N. Ostrander, or to Finch, Pruyn & Co., whom he represented, or if a sale thereof was made through the efforts, in whole or in part, of Ostrander or his company. In the latter part of May of the same year Bradley and Blandin had another meeting at which it was agreed the commission was to be two and one-half per cent. of the purchase price. The plaintiff negotiated with Ostrander and expended time and money in the effort to sell the property to him or the company, but without success. In November and December, 1911, Blandin wrote the plaintiff several letters therein stating that ''our property'' and ''the property'' was not for sale; and there was evidence tending to show that these expressions had reference to all the lands of the Somerset Land Company, including the Manchester Slope. In the late fall of that year,—the exact time did not appear,—Blandin entered into an arrangement with Ostrander whereby the latter was to undertake to sell the property to outside parties on a commission basis. He first negotiated with the International Paper Company, but no sale resulted. He then took it up with the Rich Lumber Company, and ultimately, through Ostrander's efforts—in part. at least,—a sale of the soft-wood lumber on the tract was made to that concern at five and one-half dollars per thousand feet. It is agreed that the total amount of this sale was sixty-two and one-half millions.

The action of the court below in granting the defendant's motion for a verdict was predicated upon the view that the letters from Blandin to the plaintiff above referred to amounted to a valid revocation of the plaintiff's authority, and inasmuch as he had not then earned his commission by completing a sale, he could recover nothing.

But the question of revocation was not properly in the case. The defence stood upon the general issue, alone. The doctrine of revocation implies that a valid contract of agency has been entered into, but has, prior to its performance by the agent,

been terminated by the lawful act of the principal. It does not deny the contract relied upon, it avoids it. It is, therefore, an affirmative defence, and should have been specially set up in the answer. No. 90, Acts 1915, § 2. The verdict ordered, therefore, was upon an issue not within the scope of the pleadings, and although the evidence referred to was before the jury it was to be applied only as it bore on the issues joined by the parties. *Poole* v. *Mass. Mut. Acc. Ass'n,* 75 Vt. 85, 53 Atl. 331; *Griffin* v. *Martel,* 77 Vt. 19, 58 Atl. 788; *Probate Court* v. *Enright,* 79 Vt. 416, 65 Atl. 530; *Wells* v. *B. & M. Railroad,* 82 Vt. 108, 71 Atl. 1103, 137 Am. St. Rep. 997. It is proper to say in this connection that the course of the trial below might have been such as to require us to hold that the plaintiff had waived his right to object to this line of evidence as outside the pleadings and that the defence of revocation was available on this account. But the letters from Blandin came into the case during the cross-examination of the plaintiff, and there was nothing fairly indicating that they were to be relied upon as evidence of any affirmative defence not covered by the pleadings. In these circumstances, the plaintiff is not precluded from raising the question.

Moreover, even if the plaintiff had waived this point, it would not save the case. The burden of proof on the question of revocation was on the defendant. *Bourke* v. *Van Keuren,* 20 Colo. 95, 36 Pac. 882; *Clements* v. *Stapleton,* 136 Iowa 137, 113 N. W. 546; *Hartford* v. *McGillicuddy,* 103 Me. 224, 68 Atl. 860, 16 L. R. A. (N. S.) 431, 12 Ann. Cas. 1083. And one of the essential elements of a valid revocation is the good faith of the principal. 4 R. C. L. 254; *Branch* v. *Moore,* 84 Ark. 462, 105 S. W. 1178, 120 Am. St. Rep. 78; *Handley* v. *Shaffer,* 177 Ala. 636, 59 South. 286. And see other cases collected in note to *Alexander* v. *Sherwood Co.,* (W. Va.) 49 L. R. A. (N. S.) at page 987. This was a question of fact, and should have been submitted to the jury. *Coolidge* v. *Ayers,* 76 Vt. 405, 57 Atl. 970; *Woodward* v. *Blanchard,* 16 Ill. 430.

It is not claimed that the agency of the plaintiff was terminated in any other way than by the letters, so we seek no further for a revocation.

No objection was made below to the form of the defendants' motion, and in view of this fact and the result reached we have deemed it best to treat it as sufficient.

*Reversed and remanded.*